IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 4:19-cr-00198-MGL |
| | ) | |
| v. | ) | |
| | ) | |
| **DRAPER DEWAYNE FOSTER** | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I)

Defendant Draper DeWayne Foster ("Defendant") has filed a *pro se* motion presumably asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A), relying in part on the threat posed by the COVID-19 pandemic. The United States opposes the motion. Although this Court has jurisdiction to consider Defendant's motion, Defendant – who has been fully vaccinated – has not met his burden of establishing that a sentence reduction is warranted under the statute.

### BACKGROUND

On March 4, 2020, Defendant pled guilty to one count of conspiracy to possession with intent to distribute, and to distribute, five kilograms or more of cocaine. ECF Nos. 481, 485. On December 12, 2020, with the Court well aware of the COVID-19 pandemic, the Court sentenced Defendant to 18 months confinement, to be followed by a term of supervised release of five years. ECF Nos. 577, 578. Although Defendant faced a mandatory minimum sentence of ten years, he received a reduction in sentence due to his cooperation in the case and below the Government's recommended sentence.

I.      **BOP's Distribution of COVID-19 Vaccines**

As this Court is well aware, COVID-19 is an extremely dangerous illness that has caused many deaths in the United States in a short period of time and that has resulted in massive disruption to our society and economy. In response to the pandemic, BOP has taken significant measures to protect the health of the inmates in its charge.[1]

As it specifically relates to Defendant, BOP's aggressive efforts have extended to FCI Edgefield. At present, there are no inmates who are reported positive and are isolated while they

---

[1] From the moment the pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years and refined in early 2020 in consultation with the Centers for Disease Control and the World Health Organization. Those efforts continue.

The Government recognizes that the COVID-19 case rate at a particular institution may change at any time. It therefore focuses primarily on considerations specific to a defendant. But BOP's success at many institutions in limiting the spread of the virus, and in stemming outbreaks when they occur, provides an important backdrop for Defendant's motion.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry.
In addition, acting under the authority granted in the CARES Act, BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population, which was approximately 170,000 at the beginning of the pandemic, is now more than 10% lower, at the lowest level in decades.

When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.

All of these strenuous efforts have been fruitful. To be sure, there is no way to stop this virus short of widespread vaccination, and inmates inevitably will be infected and some may succumb, just as in the population at large. But the rate of deaths in federal prisons as a whole has been lower than that in the general U.S. population, a notable achievement given the known risks of viral spread in a congregate prison setting.

are treated and recover. There are also 215 current inmates who previously tested positive and have recovered. *See* Federal Bureau of Prisons, "COVID-19 Coronavirus," www.bop.gov/coronavirus (last accessed June 3, 2021).

BOP is also working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation (formerly known as Operation Warp Speed) to ensure that BOP receives the COVID-19 vaccine as it becomes available. As of the week of February 8, 2021, doses of the vaccine had been delivered to every BOP institution.

BOP offered the vaccine first to full-time staff because staff members—who come and go between the facility and the community—present a more likely vector for COVID-19 transmission into an institution. As of this time, vaccines have been administered to all willing staff members, and BOP continues to encourage staff members who have not accepted a vaccine to do so.[2]

BOP is now in the process of offering vaccines to inmates, proceeding based on priority of need in accordance with CDC guidelines. In general, the vaccine is offered first to inmates over 75 years of age; then to inmates over 65 years of age; then to inmates of any age who present a condition identified by the CDC as presenting a risk of severe COVID-19 disease; and then to all inmates. As of this time, BOP has administered a total of 186,453 doses to staff and inmates nationwide. *See* Federal Bureau of Prisons, "COVID-19 Coronavirus," www.bop.gov/coronavirus (last accessed June 3, 2021). As of mid-April 2021, BOP estimated that if it continued to receive doses at the then-current pace, it will have offered a vaccine to every inmate in its custody by June 1, 2021. As a court recently observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa.

---

[2] Staff members may also obtain and have obtained vaccinations from other providers in the community.

Mar. 15, 2021) (Kearney, J.) (footnote omitted). At FCI Edgefield, where Defendant is held, BOP has fully vaccinated 188 staff members and 163 inmates.

The clinical guidance provided to BOP health services professionals is available at https://www.bop.gov/resources/pdfs/covid19_vaccine_guidance_20210311.pdf. The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

## **LEGAL FRAMEWORK**

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, a defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant a defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce a defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). As the movant, a defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that

standard is met if a defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if a defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to a defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)–(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

In *United States v. McCoy*, 981 F.3d 271, 281–83 (4th Cir. 2020), the Fourth Circuit held the policy statement found in U.S.S.G. § 1B1.13—which applies to reductions in terms of imprisonment under § 3852(c)(1)(A)—does not apply to compassionate release motions *brought by inmates* under § 3582(c)(1)(A)(i). Under *McCoy*, because § 1B1.13 specifies its applicability only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. *Id*. In place of the no-longer-applicable policy statement, *McCoy* permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" *Id*. at 284.

As the court later explained in *United States v. High*, however, "§ 1B1.13, even though issued before Congress authorized defendant-filed motions, 'remains helpful guidance even when motions are filed by defendants.'" --- F.3d ----, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021)

5

(quoting *McCoy*, 981 F.3d at 282 n.7). "Both before and after the change authorizing defendant-filed motions, § 3582(c) continues to describe the substantive ground the same – that a court may reduce a sentence if it finds that extraordinary and compelling reasons warrant such a reduction." *Id.* (internal alteration and quotation marks omitted). And §1B1.13 "describes '*what should be considered* extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.'" *Id.* (emphasis in original). Thus, *High* explained, although § 1B1.13 "is not applicable to *defendant-filed* motions under § 3582(c), it defines, in the medical context, the same substantive term that applies to *BOP-filed* motions. One might reasonably believe therefore that the term 'extraordinary and compelling reasons' will be defined the same for *defendant-filed* motions." *Id.* (emphasis in original).

## ARGUMENT[3]

This Court should deny Defendant's motion with prejudice on either of two independently sufficient grounds. First, Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction. Second, Defendant has not met his burden to show that a reduction is warranted in light of the danger that Defendant would pose to the community and the relevant § 3553(a) factors.

### I. Defendant Has Not Identified "Extraordinary and Compelling Reasons" for a Sentence Reduction.

The fact of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction. The guideline policy statement describes specific serious medical conditions afflicting an individual inmate, not

---

[3] The Government agrees that Defendant submitted a compassionate release request to the warden at least 30 days before the motion at issue here, and the Government agrees the Court would have jurisdiction to resolve this claim on the merits. *See* ECF No. 600-1, at 8-14. Further, the Government is not raising any mandatory claim-processing rule in this matter. *See* 18 U.S.C. § 3582(c)(1)(A); *Eberhart v. United States*, 546 U.S. 12, 19 (2005).

6

generalized threats to the entire population. As the Third Circuit therefore held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Government acknowledges, however, that an inmate who has not been offered a vaccine, who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease. *See United States v. Tartaglione*, 2020 WL 3969778, at *5–6 (E.D. Pa. July 14, 2020) ("a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held" (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 597 (W.D. Pa. 2020)); *see also United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (affirming denial of compassionate release and observing that "the district court properly considered the CDC guidance that was in effect at the time . . . . Relying on official guidelines from the CDC is a common practice in assessing compassionate-release motions.").

The CDC's list of risk factors was most recently updated on March 29, 2021. *See* Centers for Disease Control and Prevention, "Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

conditions.html (last accessed May 21, 2021). It reports a list of conditions that "can make you more likely to get severely ill from COVID-19." An inmate who has not been offered a vaccine and presents a condition on that list presents an "extraordinary and compelling reason" allowing consideration of compassionate release.[4]

Here, although Defendant argues he has numerous maladies, including high blood pressure, diabetes, high cholesterol, cardiovascular issues, and other ailments, Defendant's medical conditions appear appropriately managed at the facility, which is also engaged in strenuous efforts to protect inmates against the spread of COVID-19, vaccinate inmates and staff against COVID-19, and would act to treat any inmate who does contract COVID-19. *See* ECF No. 600. Moreover, he no longer presents an "extraordinary and compelling reason" that could warrant release because

---

[4] Before March 29, 2021, the CDC presented two separate lists of conditions that either definitively entailed a greater risk of severe illness or "might" entail a greater risk of severe illness. Those "might" conditions were asthma (moderate-to-severe); cerebrovascular disease; cystic fibrosis; hypertension; immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such as dementia; liver disease; overweight; pulmonary fibrosis; thalassemia; and type 1 diabetes mellitus. At that time, the Government maintained – and most courts agreed – that inmates with conditions on the "might" list did not present an extraordinary basis for relief. *See, e.g.*, *United States v. Durham*, 2020 WL 5577884, at *2 (W.D.N.C. Sept. 17, 2020); *United States v. Moldover*, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) ("District courts have routinely denied motions for compassionate release based on allegations of only potential COVID-19 risk factors, including asthma and hypertension.").

In the March 29 revision, the CDC merged the two lists without extensive explanation. The CDC also presents a page with information for healthcare providers, which discusses the evidentiary basis for designating each risk factor and indicates that there remains less extensive support for drawing conclusions regarding most conditions formerly listed as "might" factors. *See* Centers for Disease Control and Prevention, "Underlying Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html. The Government nevertheless continues to follow CDC guidance and therefore relies on the CDC's expanded list to define what constitutes an "extraordinary and compelling" basis for consideration of compassionate release of an inmate who has not been offered a vaccine.

It also bears noting that although age is not listed as a separate risk factor, the CDC has emphasized that it is an important indicator of risk. The CDC page regarding risk factors, updated on March 29, 2021, states: "More than 80% of COVID-19 deaths occur in people over age 65, and more than 95% of COVID-19 deaths occur in people older than 45."

he has been fully vaccinated against COVID-19. *See* Exhibit A. The motion should therefore be denied.

On April 6, 2021, BOP administered to Defendant the second and final dose of the COVID-19 vaccine produced by Pfizer. As a result, Defendant's motion for compassionate release should be denied. The guideline policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). During this pandemic, the Government has acknowledged that an unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision.

That circumstance now does not exist in this case. The defendant has received a vaccine approved by the FDA for emergency use based on its conclusion that, in extensive testing, the vaccine was 95% effective in preventing COVID-19 infection, including in participants with medical comorbidities associated with high risk of severe COVID-19 disease. *See* FDA Decision Memorandum, Pfizer – Dec. 11, 2020, https://www.fda.gov/media/144416/download.

For these reasons, Defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(C), and compassionate release is not warranted here.

II.     **The § 3553(A) Factors Strongly Weigh Against Release.**

Alternatively, Defendant's request for a sentence reduction should be denied because he has failed to demonstrate that he otherwise merits release under the § 3553(a) factors. *See United*

9

*States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021). Here, the § 3553(a) factors strongly disfavor a sentence reduction.

As to the nature and circumstances of the offense, and Defendant's own history and characteristics, Defendant's criminal conduct involved an extensive drug conspiracy dating back several years and Defendant admitted his participation.

Regarding sentencing disparities, the types of sentences available, and the need for the sentence to reflect the seriousness of the offense, Defendant may have a low criminal history score, but he received a sentence substantially lower than virtually anyone convicted in the federal system for a drug conspiracy involving five kilograms or more of cocaine. His current sentence, at an absolute minimum, reflects the seriousness of the offense and provides deterrence and just punishment. Additionally, sentences of incarceration are available for this type of violation and are consistent with the applicable policy statements.

Even assuming Defendant has made some strides in prison and had limited disciplinary history – though Defendant presents no evidence of this – on balance this does not weigh against Defendant's extensive criminal conduct. Accordingly, considering Defendant's record and the totality of relevant circumstances, including any alleged post-sentencing rehabilitation, Defendant has failed to meet his burden of establishing that he is eligible for a sentence reduction. This Court should use its discretion to deny any sentence reduction to Defendant.

## **CONCLUSION**

For these reasons, this Court should deny Defendant's motion for a sentence reduction on the merits. [5]

---

[5] To the extent that Defendant argues for relief under 18 U.S.C. § 1983, that is a civil claim and beyond the scope of Defendant's criminal case and request for compassionate release. However, nothing alleged by Defendant in this claim would warrant compassionate release for the reasons stated herein.

        Respectfully submitted,

        M. RHETT DEHART
        ACTING UNITED STATES ATTORNEY

        /s/ Derek A. Shoemake
        Derek A. Shoemake (Fed. Id. # 10825)
        Assistant United States Attorney
        U.S. Attorney's Office
        401 W. Evans Street, Room 222
        Florence, SC 29501
        Tel. (843) 667-3992
        Derek.Shoemake@usdoj.gov

June 3, 2021

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CRIMINAL NO.: 4:19-cr-00198-MGL |
| ) | |
| vs. ) | |
| ) | **CERTIFICATE OF SERVICE** |
| **DRAPER DEWAYNE FOSTER** ) | |

I hereby certify that as attorney of record I have caused an employee of the United States Attorney's Office, to serve on **June 3, 2021**, a true and correct copy of the attached **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A)(I)** via the court's e-noticing system, but if that means failed, then by mailing through the United States mail, postage paid, the same on the following person:

Draper Dewayne Foster
Prisoner No.: 34200-171
FCI Edgefield
P. O. Box 725
Edgefield, SC 29824

By: s/ Derek A. Shoemake
Derek A. Shoemake
Assistant United States Attorney

Florence, S.C.

12